**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Robert G. Hoyt, Jr., | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | Case No. 09 C 7895 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner of | ) | Magistrate Judge |
| Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Robert G. Hoyt, Jr. ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal and remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), in which the Commissioner denied Claimant's application for disability insurance benefits. This matter is before the court on Claimant's motion for summary judgment [Dkt.#47]. Claimant argues that the Administrative Law Judge's decision denying his application for disability insurance benefits should be reversed and remanded as it was not made in accordance with the applicable legal standards and is not supported by substantial evidence of record. Claimant raises in support of his motion that the ALJ (1) failed to assess the severity of the overall combination of Claimant's impairments, (2) failed to properly undertake an evaluation of Claimant's impairment to determine if they were "equal in severity" to a listing, (3) did not predicate his assessment on Claimant's ability to perform work related activities on substantial medical evidence, (4) made a credibility determination that was

patently wrong, and (5) relied upon flawed vocational expert testimony.  For the reasons set forth below, Claimant's motion for summary judgment [Dkt.#47] is denied and the Commissioner's decision denying Claimant's application for disability benefits is affirmed

## I. Background

### A. Procedural History

Claimant filed an application for Social Security disability insurance benefits and supplemental security income on August 23, 2007, alleging a disability onset date of December 1, 2000.  R.103-104. Claimant's date last insured was December 31, 2003.[1] R.228. The Social Security Administration ("SSA") denied his application on November 9, 2007.  R.107. Claimant then filed a request for reconsideration on January 10, 2008, which was denied on March 3, 2008.  R.118. Claimant then filed a timely written request on April 11, 2008, for a hearing before an ALJ.  R.8. A hearing was held before an Administrative Law Judge ("ALJ") on March 11, 2009, at which both Claimant and a Vocational Expert, William Schweis, testified.  R.8. On June 22, 2009, the ALJ issued a decision denying the claims for benefits.  R.8-19. Claimant filed a timely request on July 29, 2009, for review of the ALJ's decision with the SSA's Appeals Council.  R.1. On October 23, 2009, the Appeals Council denied his request for review, thus rendering a

---

[1] Because Social Security disability benefits under Title II are insurance against lost income lost by disability, the applicant worker must show a recent connection to the work force to maintain insured status. 42 U.S.C. § 423(c) and 20 C.F.R. § 404.130. This generally means the applicant was working in 20 of the last 40 quarters.  For an applicant who is 31 years old or older, the "date last insured status" generally is five years after his or her date of last work.

final administrative decision by the Commissioner. R.1-3. Claimant timely filed a complaint in federal court pursuant to 42 U.S.C. §405(g) on December 1, 2009 [Dkt.#1].

## B. Personal History

Claimant was born on April 21, 1973, and was twenty-seven years old at the time of his alleged onset of disability on December 1, 2000. R.103. He has three years of college education. R.226. His past relevant work was as a carpenter, fast-food worker, grocery clerk, and machinist. R.221. Claimant was forced to stop working on December 1, 2000, due to his physical impairments. R.220.

## C. Medical Evidence

### 1. Hinsdale Orthopedics

Claimant underwent a workman's compensation evaluation at Hinsdale Orthopedics on March 8, 2001. R.288. Claimant indicated undergoing a discogram two months prior, which revealed a fairly organized disc at the L4-5 level and a mildly disorganized disc at L5-S1. R.288. Dr. Bardfield noted a full range of motion in the lumbar spine with some discomfort at the end range of extension and flexion. R.288. Strength tests were normal in the hip and knee joints, but slightly decreased in the right ankle compared to the left. R.288. Some hamstring tightness was also noted in the right lower extremity and mild tightness and discomfort in the right lumbrosacral paraspinal area. R.288. Claimant was diagnosed with degenerative disc disease, right lumbar radiculitis, L5-S1 annular tear, and mild right sacroiliac joint dysfunction. R.288-89. The doctor recommended physical therapy and prescribed Neurontin to be used progressively increasing the dose and noted if Claimant's symptoms did not improve, that he would be

considered at maximum medical improvement for conservative treatment.  R.289. Due to

Claimant's high level of functioning, surgical intervention was not recommended.  R.288.

2. Stroger Hospital

Six years later, Claimant was seen at Aunt Martha's clinic for right upper

extremity radiculopathy and advised to go to the hospital for further evaluation.  R.325.

At Stroger Hospital on July 23, 2007, Claimant was evaluated and advised to obtain an

MRI.  R.325. An MRI of Claimant's cervical spine was taken on July 26, 2007, which

revealed a congenitally narrow cervical spinal canal, disc bulging and superimposed disc

protrusion at C6/7 with evidence of central canal stenosis and additional disc bulging at

all other levels.  R.322-23.

Due to numbness and tingling in Claimant's left and right hands, an EMG was

performed on February 13, 2008.  R.358. The EMG study was normal, with no

electrophysiological evidence of cervical radiculopathy affecting either upper extremity

or of median mononeuropathy at either wrist.  R.358.

3. Dr. Vinod G. Motiani

Claimant underwent a consultative evaluation ("CE") with Dr. Vinod G. Motiana

on November 1, 2007.  R.346. Claimant indicated continuous pain in his lower back,

right thigh and right leg of 5/10 in intensity which was exacerbated by repetitive motions,

prolonged walking, and standing for longer than fifteen to twenty minutes.  R346.

Climbing a flight of stairs, however, generally did not cause Claimant any problems.

R.346. Dr. Motiana noted right movements in his cervical spine were slightly tender and

minimal spasms.  R.348. His tandem gait, tippy toe walking, heel walking, and ability to

kneel and squat were all unremarkable.  R.348. Dr. Motiana indicated this could mean possible degenerative disc disease, possible right lumbar radiculitis and mild right sacroiliac dysfunction.  R.348.

### 4. Dr. Virgilio Pilapil

Dr. Virgilio Pilapil performed a physical residual functional capacity ("RFC")[2] assessment on November 7, 2007.  R.336. Dr. Pilapil indicated a functional capacity to lift fifty pounds occasionally, twenty-five pounds frequently, and to stand and/or walk for six hours and to sit for six hours out of an eight hour work day, with unlimited pushing and/or pulling.  R.337. Dr. Pilapil indicated Claimant therefore retains the ability to perform medium work.  R.343.

### 5. St. James Hospital – Health Center

A CT scan was performed on Claimant's cervical spine at St. James Hospital on June 22, 2007. R. 423. The six different projections revealed minimal degenerative changes involving the lower cervical spine.  R.423. An ultrasound was also performed on the left side of Claimant's skull.  R.424. There was a well-defined echo complex mass lesion in the skull on the left side, but its significance was unknown.  R.424. Due to persistent hip pain, an MRI was performed of his right hip on February 20, 2008.  R.391. However, the MRI was unremarkable.  R.391. An additional MRI of Claimant's lumbar spine was also performed on November 24, 2008.  R.388. The MRI showed moderate degenerative changes of the lumbar spine, most severely noted at L5-S1.  R.389.

---

[2] The RFC is the most that a claimant can do despite the effects of her impairments. 20 C.F.R. § 404.1545(a).

6. Dr. Jennifer D. L. Byrd

Claimant's treating physician, Dr. Jennifer D. L. Byrd, the Medical Director of Aunt Martha's Healthcare Network of Aunt Martha's Youth Service Center, Inc., provided a report to the State of Illinois Department of Human Services on June 12, 2008. R.434. Dr. Byrd's report was based on Claimant's visits at her center since July 23, 2007. R.430. The report noted multiple traumatic injuries resulting in neck pain, hip pain, and a decreased range of motion in his cervical spine. R.431. Dr. Byrd noted Claimant's ambulation was normal. R.431. Dr. Byrd noted a twenty percent reduced capacity to walk and perform activities of daily living, a twenty to fifty percent reduced capacity to bend, stand, stoop, sit, and turn, and a greater than fifty percent reduced capacity to climb, push, pull and perform finger dexterity. R.433. Claimant also was noted to be able to lift no more than ten pounds at a time during an eight hour work day. R.433.

Dr. Byrd also provided a report for additional medical information for Claimant's hearing on March 11, 2009. R.434. Dr. Byrd noted that Claimant suffers from severe, constant, and activity-limiting pain in his back, neck, and right hip. R.438. This pain was noted to improve with medication and intermittent periods of rest. R.438. Claimant indicated the pain worsened with long-term sitting, long-term standing, bending, twisting and walking. R.438. A physical examination revealed a severely limited range of motion with flexion and extension of his spine, point tenderness along his spine, and a slowed mildly based gait. R.438. Dr. Byrd noted that this condition is disabling and expected to last for years. R.438. Dr. Byrd stated that "due to the severity of his back pain, [he] is a

6

poor candidate for usual and ordinary employment given the need for frequent position changes, the need to lie down intermittently, and a distractible pain that is easily exacerbated by simple movements." R.439. She also indicated she found Claimant to be credible. R.439.

**D. Hearing Testimony**

1. Claimant's Testimony

At the time of the hearing, Claimant was 35 years old, single, and had been living with his parents for two and a half to three years. R.32. Claimant graduated high school and obtained an associate's degree. R.34. At the time of the hearing, Claimant did not have an income and was receiving food stamps. R.34. Claimant indicated he last worked in 2007 as a machinist, but only for a few months. R.35. He also reported going to school in 2003 and 2006-2007, taking an average of four to five classes at one time. R.36-37. However, Claimant only went into school approximately twice per week as some of these classes were online. R.37.

Claimant indicated that on the previous day he drove his father's car to a friend's house to pick up a box of shirts. R.45. His father carried the shirts to the car and hung them on hangers for him at their house because Claimant attempts to refrain from activities that will exacerbate his back pain. R.46. Claimant reported being able to cook his own food, do is own dishes, make his bed, sweep and dust his room, and do his own laundry, but he does not clean the bathroom. R.47-48.

Claimant indicated he sustained a lower back injury while working as a carpenter in 2000. R.48-49. This back injury prevents him from being able to bend repetitively and

as a result he can no longer perform his carpentry job. R.49. In addition, Claimant was forced to miss a couple days of school due to back pain. R.53. Claimant later reported shooting pains in his right arm and hand, which he was told was due to a pinched nerve in his neck. R.54. He indicated seeing Dr. Byrd seven or eight times for these symptoms over a year and a half because Aunt Martha's Healthcare Network offered free clinics. R.55. Claimant also indicated suffering from neck pain for which he took part in physical therapy and received epidural injections, neither of which provided more than temporary relief. R.55-56.

Clamant indicated his back condition has gotten worse recently. R.59. He noted taking painkillers and getting up to walk around after sitting for extended periods to alleviate his pain. R.59. The ALJ noted, however, that Claimant had been sitting for forty minutes at the hearing without getting up though Claimant indicated he had been using his hand to massage his back to alleviate the pain. R.60. Resting is Claimant's only other method to alleviate his pain and control his back spasms. R.61. Claimant spends three-quarters of his day lying down, but indicated difficulty sleeping due to being unable to get comfortable because of his neck, hip, and back pain. R.61. He also refrains from using his right arm for activities and avoids bending over at all. R.63. Claimant indicated taking approximately six medications to control his pain. R.64-65.

Claimant also indicated an inability to stand for extended periods of time, with his longest periods lasting from four to five minutes while he is at church or walking to the mailbox. R.67. He indicated being able to walk about a quarter of a block before experiencing back tightness, back spasms, and shooting pains down his right leg. R.68.

Claimant indicated he is able to lift a gallon of milk, but if required to lift it several times it would hurt.  R.70. He also only uses his left arm to lift objects and is pretty much "throwing away" his right arm.  R.70. He is fatigued by any use of his right hand and doesn't have full feeling in his fingertips.  R.71. Using his computer for even a short time causes a tingling and burning sensation and shooting pains from his elbow to his fingertips.  R.73. After long trips to his doctor, Claimant also requires a few days of no activity to recover. R.74.

### 2. Vocational Expert's Testimony

William Schweis is a vocational expert ("VE") who testified to whether Claimant would be able to perform his past relevant work and other work in the national economy. R.76-102. Mr. Schweis indicated that Claimant's past relevant work required medium and heavy functional capacities.  R.78-79. The ALJ interrupted Mr. Schweis' testimony to ask Claimant if he had lifted over one-hundred pounds at his previous job as a machinist, as his Social Security form indicated.  R.81. Claimant indicated he must have misunderstood the question, as he never lifted greater than ten pounds at this position. R.82. Mr. Schweis then explained that Claimant's previous position as a machinist would be considered semiskilled work due to the nature of his job requirements.  R.86.

The ALJ then posed whether restrictions such as being unable to climb ladders, ropes, or scaffolds, work at heights or around hazards, crawl, crouch, and kneel, would limit an individual's capacity to perform a full range of light work. R.87. Mr. Schweis indicated that such an individual would not be further limited by these restrictions and could still perform light work.  R.87-88.

The ALJ then asked whether any sedentary unskilled occupations would be available to an individual with sedentary work restrictions, along with the previously stated restrictions and limitations with his handling and fingering with his right dominant hand. R.88. Mr. Schweis testified such positions would be available, citing machine tending positions, an information clerk, and receptionist type work. R.88. Mr. Schweis also testified that additional restrictions of no climbing on ramps or stairs would not change his functional capacity either. R.90-91. These positions are also noted to require no more than a day to a day and a half off per month. R.91.

**E. ALJ's Decision**

Following the hearing on March 11, 2009, and a review of the medical evidence, the ALJ determined that Claimant was not disabled as of his alleged onset date of December 1, 2000, through the date of the decision, upholding the denial of Claimant's applications for disability insurance benefits and supplemental security income. R.19.

The ALJ first established that Claimant meets the insured status requirements of the Social Security Act through December 31, 2003. R.10. The ALJ then reviewed Claimant's application under the five-step sequential evaluation process. R.10-19. At step-one, the ALJ found Claimant had not engaged in substantially gainful activity since December 1, 2000, the alleged onset date. R.10. Claimant was noted to have worked after the alleged onset date, but the ALJ determined this work did not rise to the level of substantially gainful activity. R.10. At step-two the ALJ found Claimant suffers from the following severe impairments: degenerative disc disease and obesity. R.11. At step-

three, the ALJ determined Claimant does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Pt.. 404, Subpt. P, App. 1. R.11.

The ALJ then determined Claimant's RFC in consideration of the entire record and found Claimant has the RFC to perform light work,[3] except that, "Claimant is unable to climb ladders, ropes or scaffolds, must avoid exposure to unprotected heights and hazards, and is unable to do any crawling, crouching, or kneeling. He is only capable of occasionally stooping." R.12. The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however Claimant's statements concerning the intensity, persistence and limiting effects were not fully supported by the medical evidence. R.16. The ALJ noted that Claimant did not seek any medical treatment whatsoever following Dr. Bardfield's examination in March of 2001 until July 2007. R.16. Claimant's testimony about preparing his own meals, washing his own dishes, and doing his own laundry revealed that he was rather active during this period, according to the ALJ. R.16. Claimant also indicated he was able to drive long distances, to mow large tracts of land and attend school full-time, none of which was consistent with his alleged pain and limitations. R.16.

The ALJ also stated that radiological studies in the record have been interpreted to show only a relatively minor congenital abnormality of the cervical spine and mild to moderate degenerative changes in the lumbar spine. R.16. Studies on Claimant's

---

[3] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds and a "good deal" of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). A "good deal" or walking or standing is described as doing so, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10.

shoulder and hip were also noted to be normal. R.16. The ALJ stated that the treating

physicians have not recommended more aggressive treatment, further demonstrating that

Claimant is not really experiencing the limitations he alleges. R.16. Other noted

inconsistencies included Claimant's alleged inability to sit for more than very short

periods, yet he sat through the entire hearing without showing any signs of discomfort.

R.17.

Based on the medical evidence, the ALJ determined that there was "no evidence in

the record that would indicate the presence of a medically determinable impairment that

would have significantly limited Claimant's ability to perform any basic work-related

activities before his date last insured on December 31, 2003. R.17. The ALJ noted that

Claimant even alleges that the more significant limitations started in mid-2007. R.17.

The ALJ then noted that Dr. Byrd's report in 2008 based on visits with Claimant after

July 2007 contained "only minimal clinical findings, limited to range modest limitations

of motion of the lumbar spine and a slowed gait." R.17. Rather, the ALJ indicated that

Dr. Byrd does not indicate any clinical findings of muscle weakness, reflex loss, or other

signs of nerve root impingement. R.17. In fact, although Dr. Byrd found Claimant to

have neuropathy attributed to a cervical spine disorder, an EMG of the upper extremities

was normal without any evidence of radiculopathy. R.17. As a result, the ALJ concluded

that Dr. Byrd's opinion is not well supported and "appears to be based on the doctor's

uncritical acceptance of Claimant's subjective complaints." R.17. Therefore, the ALJ did

not attribute Dr. Byrd's opinion significant weight.

In contrast, the ALJ found the assessment of the State agency medical experts to be generally persuasive. R.17. Nevertheless, the ALJ gave Claimant the "benefit of the doubt" and found him to be capable of light work. R.17. Yet, the ALJ indicated he is unable to climb ropes, scaffolds, or ladders, should avoid unprotected heights or hazards, and is unable to crawl, crouch, or kneel. R.17. However, he is able to stoop occasionally and should have no limitations standing, walking, or sitting throughout a typical workday. R.17-18. Consequently, the ALJ found Claimant to be unable to perform his past relevant work, as these positions required medium and heavy work. R.18.

Therefore, considering Claimant's age, education, work experience and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that claimant can perform. R.18. This would be supported by a finding of Medical-Vocational Rule 202.21 which would find Claimant to be "not disabled." R.18. Thus, the ALJ concluded Claimant was not disabled as defined by the Social Security Act, from December 1, 2000, through the date of the decision. R.19.

## II. Legal Standard

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by the ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial Review is limited to determining whether the decision is supported by substantial evidence in the record and

whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is enough." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is differential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B. Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. Discussion

The ALJ's decision will be upheld if it is supported by substantial medical evidence from the record. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir 2004). Evidence is "substantial" when it is "sufficient for a reasonable person to accept as adequate to support the decision." *Jens v. Barnhart,* 347 F.3d 209, 212 (7th Cir. 2003). "To determine if substantial evidence exists, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's 'by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000). In this case, the ALJ properly applied the five-step sequential evaluation process and supported his conclusions with substantial evidence in the record.

### A. The ALJ Properly Assessed Claimant's Overall Combination of Impairments

The ALJ's determination that Claimant's degenerative disc disease and obesity were severe impairments was the result of a proper assessment of Claimant's overall combination of impairments. Claimant argues that the ALJ did not assess the overall combination of Claimant's impairments at step-two in the five-step evaluation process because she failed to address all of Claimant's impairments. Social Security regulations provide that a claim will be denied unless the ALJ finds a severe impairment which limits Claimant's ability to perform work related activities. 20 C.F.R. §404.1520(a)(4)(ii); 20 C.F.R. §404.1520(c). The severity standard at step-two is used to "screen out" entire claims where a claimant's alleged impairment or combination of impairments is found to impose no work-related limitations. *See Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988). As

long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed with his evaluation of Claimant's impairments. *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010); 20 C.F.R. § 404.1523. Here the ALJ did determine that Claimant suffered from two severe impairments, as supported by subsequent evidence in her opinion. R.11. The ALJ therefore properly evaluated Claimant's impairments to determine if they were severe.

Furthermore, the ALJ did assess the overall combination of all of Claimant's alleged impairments. In addition to evaluating Claimant's degenerative disc disease and obesity, the ALJ considered Claimant's alleged right shoulder, right hip, back, and neck pain and central canal stenosis when performing her step-two evaluation. R.11-12. Moreover, the ALJ, evaluated all of these same impairments again when making her RFC determination. R.12-18. Consequently, despite not finding all of Claimant's impairments qualified as severe impairments at step-two, the ALJ continued to assess and consider Claimant's multiple impairments throughout her evaluation. Accordingly, Claimant's argument that the ALJ did not properly access Claimant's overall combination of impairments is without merit.

**B. The ALJ Properly Evaluated Whether Claimant's Impairments Were "Equal in Severity" to a Listing**

The ALJ next properly evaluated the medical evidence to determine that Claimant's impairments did not meet the requirements for a listing. Claimant argues that the ALJ erred by not undertaking an equivalence evaluation in finding that his impairments did not equal the requirements for any of the listed impairments in the SSA

regulations. The ALJ must articulate the specific listings she is considering and provide more than "perfunctory analysis" for how she arrived at her determination with reference to an expert's opinion. *Cirelli v. Astruet*, 751 F. Supp. 2d 991, 1002 (7th Cir. 2010). Here, the ALJ addressed whether Claimant's impairments meet the level of severity described in musculoskeletal Listings 1.02 and 1.04.

Claimant argues that the ALJ failed to consider medical evidence to determine if his impairments were equal in severity to Listing 1.04 for disorders of the spine. Pls. Mem. [Dkt.#48] at 10. However, the ALJ explained that Listing 1.04 requires clinical findings to establish the existence of nerve root compression characterized by neuro-anatomic distribution of pain, motor loss, sensory and reflex loss with nerve root impingement, spinal arachnoiditis, or evidence of lumbar spinal stenosis, resulting in pseudo-claudication. R.11. Listing 1.04, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then noted that the medical records from Claimant's physicians failed to provide the requisite clinical findings of any neuro-anatomic abnormalities. R.11. This conclusion was supported by Claimant's lack of spinal surgery, MRI findings that Claimant only had moderate degenerative changes, and no significant central canal stenosis. R.11-12. This evaluation of medical evidence goes beyond a perfunctory level of analysis and supports the ALJ's determination whether Claimant's impairments meet a listing.

Furthermore, Claimant failed to present sufficient evidence to support his argument that his impairments equal any Social Security listing. Claimant has the burden of showing that his impairments meet a listing and must show that his impairments meet all the requirements specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th

Cir. 2006). Here, Claimant never established the criteria for the listing he claimed

equaled his impairments.  Although Claimant does set forth a history of medical

evidence, no application of this evidence was made to show how these impairments equal

the requirements for Listing 1.04. Consequently, Claimant failed to meet his burden of

establishing that his impairments meet a listing. For these reasons, the Court finds the

ALJ reasonably concluded that Claimant's impairments are not equal in severity to the

requirements that meet a Social Security listing.

**C. The ALJ Based Her Determination Regarding Claimant's Work Capacity on Substantial Medical Evidence**

The ALJ's determination that Claimant is capable of performing a light range of

work-related activities was supported by substantial evidence. Specifically, the ALJ

concluded that Claimant is limited to lifting and carrying twenty pounds occasionally and

ten pounds frequently, is unable to climb ropes, scaffolds and ladders, and is unable to

crawl, crouch or kneel. R.17.  The ALJ noted, however, that Claimant retains the ability

to stoop and is unlimited in his ability to stand, walk, or sit throughout a typical workday

with ordinary rest breaks. R.17-18.

Claimant argues that the ALJ's determination was not based on substantial

evidence. The ALJ is required to describe the maximum amount of work-related activity

Claimant is able to perform. SSR 96-8p. "The RFC assessment must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical

facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

observations).” *Id*. Here, the ALJ set forth in a narrative discussion reasons sufficient to support her conclusions.

The ALJ first cited medical facts from Dr. Bardfield's and Dr. Byrd's medical records in support of the RFC of light work. Based on her medical treatment, Dr. Byrd opined that Claimant is a poor candidate for employment due to his distractible pain causing a need to change positions frequently and lay down intermittently. R.17,439. The ALJ noted that Dr. Byrd further indicated Claimant has severe limitations in his ability to bend, stand, stoop, sit, turn, push, pull, and use of fine manipulation and finger dexterity. R.17. However, the ALJ concluded that these findings were not “particularly meaningful” because no indication was given regarding how Claimant's abilities are limited and for how long. R.17. The ALJ further noted that Dr. Byrd's medical reports showed only minimal clinical findings. R.17. For example, an EMG of Claimant's upper extremities was normal without any evidence of radiculopathy. R.17. Dr. Byrd also performed an MRI which revealed disc bulging but no canal stenosis at any level. R.17. The ALJ thus concluded that due to a lack of clinical findings, Dr. Byrd's opinion that Claimant is a poor candidate for employment is not well-supported.

Rather, the ALJ found that Dr. Byrd's actual medical reports indicated only a modest limitation in the motion of Claimant's lumbar spine and a slowed gait. R.17 The ALJ further cited the State Agency medical advisor's opinion that Claimant retained the ability to perform a full range of medium work. R.17. The ALJ relied upon significant medical evidence as well as the contrary opinion from the State Agency consultant used by the ALJ to support her conclusion that Claimant was not limited to the extent he

alleged. Nonetheless, the ALJ gave Claimant the benefit of the doubt and, considering the record as a whole, determined Claimant was capable of only light work. R.17-18.

The ALJ further supported her conclusions with nonmedical evidence pertaining to Claimant's daily activities and the ALJ's own observations of Claimant during the hearing. Despite Claimant's allegation that he is unable to sit for more than very short periods of time, the ALJ observed him sitting throughout the entire hearing, a period of more than one and one-half hours. R.17. Although he showed no signs of discomfort, the ALJ offered to let him stand if he wished, but Claimant declined that invitation. R.17. The ALJ noted that if Claimant were actually experiencing discomfort, she would expect him to accept the offer to stand. R.17. The ALJ also noted that Claimant drove long distances, mowed lawns, and attended junior college full-time subsequent to his alleged onset date. R.16. Therefore, because the ALJ supported her RFC assessment that Claimant is capable of performing light work with medical and nonmedical evidence and facts in the record, her conclusions were based on a narrative discussion and sufficiently supported to pass muster under this Court's deferential standard of review.

## D. The ALJ's Credibility Determination Was Supported By Substantial Evidence

The ALJ appropriately evaluated Claimant's credibility and reasonably concluded that Claimant's subjective allegations regarding his limitations were not credible. An ALJ's credibility determinations are entitled to considerable deference and are not to be overturned unless patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). "Only if the trier of fact grounds his credibility finding in an observation or

argument that is unreasonable or unsupported ... can the finding be reversed." *Sims v. Barnhart,* 442 F.3d 536, 538 (7th Cir.2006). As a result, in order to pass muster on review, the credibility determination must contain specific reasons for the ALJ's credibility findings. SSR 96-7p; *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007).

Here, the ALJ did not find Claimant's allegations regarding his impairments to be fully credible. R.16. In support of this conclusion, the ALJ noted Claimant did not seek medical treatment from March 2001 until July of 2007. R.16. During this period, Claimant also indicated he drove long distances, mowed large tracts of land, and attended junior college on a full-time basis. R.16. Claimant took an overage of four or five classes at one time, going to the school campus and taking classes online. R. 36-37. These activities were found to be inconsistent with Claimant's alleged pain and limitations, thus leading to a less than fully credible determination by the ALJ. R.16. Therefore, because the ALJ supported her credibility determination with evidence from the record and provided a logical bridge from that evidence to her conclusion, her credibility findings will be upheld.

### E. The ALJ Properly Relied on Vocational Expert Testimony

Claimant argues that the ALJ improperly relied on the testimony of the VE because the ALJ's hypotheticals did not provide for Claimant's pain and other limiting symptoms. In general, an ALJ's hypotheticals are required to include all the limitations supported by medical evidence in the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). However, the ALJ is only required to incorporate into her hypotheticals the limitations and impairments which she has determined to be credible. *Simila v. Astrue*,

573 F.3d 503, 520 (7th Cir. 2009). Consequently, as the ALJ properly determined that Claimant's allegations of impairments were not fully credible, she was not required to include all of them in her hypotheticals.

Claimant further argued that the ALJ improperly relied on the VE's testimony regarding the number of jobs available in the national economy because no documentation was provided to support such conclusions. 20 C.F.R. §404.1566 establishes the guidelines for determining if other work exists in the national economy. 20 C.F.R. §404.1566(e) provides that, "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a VE or other specialist." It is up to the ALJ whether to rely on the VE's testimony. 20 C.F.R. §404.1556(e). There is no requirement, as Claimant argues, that documentation must be provided supporting the VE's figures. In contrast, the ALJ has the discretion whether to use a VE and rely on his or her testimony. Therefore, despite not receiving documentation proving the number of available jobs in the national economy, there is no basis for this Court to say that the ALJ did not properly rely on the VE's testimony in this case.

## IV. Conclusion

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Robert G Hoyt, Jr.'s motion for summary judgment [Dkt.#47] is denied and the

Commissioner's decision denying Claimant's application for disability benefits is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   December 10, 2012